# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

___

**CHRIS J. JACOBS, III,**

      **Plaintiff,**

    **-vs-**                                                               **Case No.    04-C-725**

**MATTHEW J. FRANK,**

      **Defendant.**

___

## DECISION AND ORDER
___

        Plaintiff Chris J. Jacobs, III, who is currently incarcerated at Wisconsin Secure Program Facility (WSPF), filed this *pro se* civil rights action under 42 U.S.C. § 1983 and was granted leave to proceed *in forma pauperis*. The plaintiff is proceeding on three claims as set forth in the March 18, 2005, amended complaint: 1) an Eighth Amendment claim that since arriving at Green Bay Correctional Institution (GBCI) the plaintiff has lost a significant amount of weight because he does not receive enough food; 2) a denial of access to the courts claim that the plaintiff's access to the courts was hindered at GBCI, and that consequently two of his cases were dismissed; and 3) a retaliation claim that the plaintiff is being retaliated against for filing complaints. There are numerous motions pending, which will be addressed herein.

**Plaintiff's Motions for Court Orders/Injunctive Relief**

On December 8, 2005, the plaintiff filed Motion for Court Order (Docket #43) in which he seeks a court order for three adequate meals daily. The plaintiff asserts that on November 16, 2005, a female correctional officer did not give him his lunch tray because he was sleeping. The plaintiff also states that he is "starving": "[m]y senses are dulling because I'm 50 lbs. underweight because of being starved of food, this is all the more reason . . . to wake me." (Pl.'s Mot. at 2.) The defendant contends that the plaintiff is not entitled to a wake-up call for lunch. "If the plaintiff wants to be fed lunch, all he has to do is stay awake long enough to receive his meal tray, eat his lunch, and return the tray. He may then snooze to his heart's content until supper time." (Def.'s Resp. at 1-2.) The defendant further contends that the plaintiff has an adequate remedy at law in that he may use the Inmate Complaint Review System followed by certiorari review. In his reply brief, the plaintiff asserts that "our handbook" states that all meals are to be announced. He also states that the Health Services Unit has instructed him to "slow down" and "sleep more" and that if he was getting double portions of food and nightly snack bags like the doctor ordered, he would not be in a daze all of the time. He states that WSPF staff has "no problem" knocking on cell doors for other things, including asking him questions on third shift. The plaintiff further states:

> AAG Hoel goes on "He may then snooze to his heart's content until supper time." But AAG Hoel does not have answer for waking me up for suppertime. I invite AAG Hoel to come to this place and live under these circumstance for a couple months, I'm willing to bet AAG Hoel will not be so sarcastic. Two days ago, a man, couple cells away from me committed suicide from the

2

conditions here. Also other guys complain about being hungry all
the time.

(Pl.'s Reply to Def.'s Resp. for Court Order at 2.) With respect to an adequate remedy at law, the plaintiff maintains that the Inmate Complaint Review System is not available to him because he files inmate grievances and they are repeatedly returned to him stamped "rejection," "previously addressed," and/or sent back to him without a complaint number. Moreover, the plaintiff claims that he cannot get into Wisconsin courts for certiorari review. However, he then goes on to describe a recent case he filed in state court and, although the resolution of the case was not as prompt as the plaintiff would have liked, he "finally got hearing" and he subsequently filed an appeal. *Id.* at 3-4. Finally, on December 22, 2005, the plaintiff filed a letter to the court further explaining his food situation and his requests for more food. Attached to the plaintiff's letter are two memos to the plaintiff from Nurse Cindy Sawinski, WSPF Health Services Manager, that provide relevant information about the plaintiff's food complaints. The first memo from Nurse Sawinski to the plaintiff is dated November 16, 2005, and states:

> Mr. Jacobs this is in response to your correspondence to Warden Schneiter regarding extra food.
>
> On 10-23-02 Dr. Kim ordered a high protein, high calorie diet for 3 months. On 3-18-04 you were ordered a double portion diet for one month, on 4-13-04 you were ordered a double portion diet for one month which was then discontinued on 4-22-04. On 7-16-04 you were ordered a double portion diet only while in seg. A double portion diet was ordered again on 1-7-05 while in seg only. On 10-7-05 you were ordered a snack bag for 2 weeks.

3

> You weigh is currently 193 lbs. There has not been any recent
> significant weight loss and Dr. Cox feels your weight is more than
> adequate for your body mass. Your medical condition is stable.

The second memo, dated November 22, 2005, states:

> Mr. Jacobs this is in response to your correspondence to Warden
> Schneiter regarding your concerns of not receiving enough food to
> eat and not receiving x-rays as ordered by Dr. Cox.
>
> The x-rays were ordered and an appointment scheduled for you on
> 10-31-05. You have previously been informed they were ordered.
>
> Your weight has been consistent since your arrival here on 10-13-05.
> On 10-17-05 you weighed 202 lbs, 10-25-05 198 lbs, 10-27-05 203
> lbs, 10-30-05 201 lbs, 10-31-05 199 lbs, 11-6-05 201 lbs, and 11-13-
> 05 199 lbs. This is well with in the limits of your body mass index
> which for your height is 150 to 190 lbs.

On February 21, 2006, the plaintiff filed Motion for Injunction (Docket #72). This motion seeks a court order that WSPF not go forward with its plan to cut calories on March 8, 2006, by replacing 1% milk (120 calories) with skim milk (90 calories).[1] According to the plaintiff, this change will reduce his daily calorie intake by 120 calories, and nothing has been added to replace these calories. On some days, he will be receiving less than 2000 calories. The defendant contends that the plaintiff has not demonstrated that he will suffer irreparable harm by having his milk's fat content reduced from 1% to non-fat. The defendant also contends that the plaintiff has an adequate remedy at law, the Inmate Complaint Review System followed by certiorari review, which would preclude preliminary injunctive relief.

---

[1] On March 6, 2006, the plaintiff filed Reply to My February 15, 2006 Motion for Injunction (Docket #77), which argues in support of his February 21, 2006, Motion for Injunction. This March 6, 2006, filing was inadvertently docketed as a separate motion and since it is not actually a motion, it will be denied as moot.

4

On March 9, 2006, the plaintiff filed Motion for Court Order (Docket #80) in which he seeks, 1) a court order to release two cassette tapes; and 2) to allow him to complain to federal agencies with legal loans and/or to honor his weekly free envelope. According to the plaintiff, the two cassette tapes have been held for him at Waupun Correctional Institution since 2001 and were recently sent to WSPF. Shortly after the tapes arrived at WSPF, the plaintiff was informed that the tapes had to be sent out of the prison or they would be destroyed. The plaintiff told prison officials to send the tapes out, however, he was then told that they could not be sent out because he has no money, and that therefore the tapes would be destroyed. In addition, the plaintiff would like to be able to use his legal loan money to complain to federal agencies.

Since the plaintiff seeks court orders prohibiting the defendant from doing a specified act or commanding the defendant to undo a wrong, the court construes the plaintiff's motions as motions for preliminary injunctions. In deciding whether to grant a motion for a preliminary injunction, the court should consider (1) whether the moving party has an adequate remedy at law; (2) whether he will suffer irreparable harm if the preliminary injunction is not issued; (3) whether the irreparable harm he will suffer if the preliminary injunction is not granted outweighs the irreparable harm the defendant will suffer if the injunction is granted; (4) whether he has a reasonable likelihood of prevailing on the merits; and (5) whether the injunction will not harm the public interest. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). The moving party's threshold burden is to establish the first and second factors and to show "*some likelihood of success on the merits.*" *Ping v. Nat. Educ. Ass'n*, 870 F.2d 1369, 1371 (7th Cir.

5

1989) (emphasis in original); *see also Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453 (7th Cir. 1995). Once the initial burden is met, the inquiry then becomes a sliding scale analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits. *Ping*, 870 F.2d at 1371.

"The purpose of a preliminary injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). "The more likely the plaintiff is to win, the less likely need the balance of harms weigh in his favor in order to get the injunction; the less likely he is to win, the more it need weigh in his favor." *Ping*, 870 F.2d at 1371-72 (citation omitted).

The plaintiff's first two motions have to do with food. He seeks a court order for three adequate meals daily and an order that WSPF not go forward with its plan to replace 1% milk with skim milk. In support of the plaintiff's first motion, he states that on one recent occasion a correctional officer denied him a meal tray because he was sleeping.

The denial of food that inflicts serious harm on a prisoner constitutes cruel and unusual punishment. *Freeman v. Berge*, — F.3d —, 2006 WL 722142, at *1 (7th Cir. Mar. 23, 2006 (citations omitted). However, there is a difference between using food deprivation as punishment and establishing a reasonable condition to the receipt of food. *Id.* The reason for the distinction is because if deprivation of food is an unconstitutional punishment, a food policy cannot be enforced. *Id.* at *2. In *Freeman*, the prisoner plaintiff Freeman was incarcerated at WSPF and food was withheld from him, to the extent that he lost 45 pounds in 31 months,

6

because he failed to follow WSPF's feeding rules. *Id.* at \*\*1-2. The Seventh Circuit Court of Appeals affirmed the district court's grant of judgment as a matter of law for the defendants, holding that "[b]ecause to an overwhelming degree Freeman's food deprivation was self-inflicted, even if not 100 percent of it was, and the record contains no evidence that he experienced real suffering, extreme discomfort, or any lasting detrimental health consequences, the judgment for the defendants must be, and it is, affirmed." *Id.* at \*4.

The appeals court decided that the following WSPF rules are reasonable conditions of receiving food: that a prisoner be wearing trousers, that a prisoner not be wearing a sock on his head, and that a prisoner's cell wall not be smeared with blood and feces that he refuses to clean up. *Id.* at \*2. The court went on to say that "[u]nless the guards had difficulty waking him or were fearful as to how he might react to being wakened, his being asleep at mealtime would not be a good reason for not feeding him." *Id.* As noted, the plaintiff points to one occasion for which he was denied food because he was asleep. However, one occasion of missing a meal does not rise to the level of cruel and unusual punishment. *See id.* at \*2. Due to the recent publication of *Freeman*, the defendant should now be on notice that the plaintiff's being awake is not an across-the-board reasonable condition on receipt of food. The plaintiff weighs close to 200 pounds and falls well within his body mass index for his height. The plaintiff has not demonstrated a reasonable likelihood of success on the merits as to his deprivation of food claim. Moreover, the plaintiff has not shown that he will suffer irreparable harm if injunctive relief is

7

not granted. Accordingly, the plaintiff's December 8, 2005, motion for court order and February 21, 2006, motion for injunctive relief will be denied.

The plaintiff's third motion for court order seeks a court order to release two cassette tapes and to be able to use legal loan money to complain to federal agencies. With respect to this motion, the plaintiff has not shown that he does not have an adequate remedy at law, that he will suffer irreparable harm if injunctive relief is not granted, or that he has a reasonable likelihood of prevailing on the merits. Thus, his March 9, 2006, motion for court order will also be denied.

## **Discovery-Related Motions**

On December 28, 2005, the plaintiff filed a motion to compel discovery (Docket #50). He requests that the court order the defendant to respond to his interrogatory number 13. The plaintiff also appears to be challenging the defendant's response to other discovery requests from his request for interrogatories and request for production of documents. However, the plaintiff has failed to supply the court with his discovery requests and the defendant's responses. Moreover, there is no indication that the plaintiff has conferred with the defendant in an attempt to resolve this dispute without involvement of the court.

Although Fed. R. Civ P. 37 permits the court to compel discovery, the party seeking such discovery must complete several steps before court intervention is appropriate. The party seeking discovery must first direct his request to the opposing party. If the opposing party fails to provide the materials, the party must then "personal[ly] consult[]" with the opposing party and

8

"attempt[] to resolve their differences." Civ. L.R. 37.1 (E.D. Wis.). If the party is still unable to obtain discovery, he may file a motion to compel discovery with the court pursuant to Fed. R. Civ. P. 37(a). Such motion must be accompanied by a written statement that the parties were unable to resolve their differences after personal consultation and a statement of the "date and time of such conference and the names of all parties participating in it." *Id.*

The motion before the court appears to be the plaintiff's initial request for discovery. As he has not indicated that he made any such prior demand of the defendant or engaged in the required personal consultation, court action would be premature. Therefore, the plaintiff's December 28, 2005, motion to compel will be denied.

On December 28, 2005, the defendant filed a motion to dismiss (Docket #51). The defendant contends that the court should dismiss this action without prejudice because the plaintiff has refused to permit counsel for the defendant necessary access to the plaintiff's Wisconsin Department of Corrections (DOC) medical records. According to the defendant, on November 21, 2005, he sent the plaintiff a letter explaining that because the plaintiff had put his medical condition at issue in this action, the defendant was entitled to relevant records. Accompanying the letter was an Authorization And Informed Consent For Use And Disclosure Of Medical Information form for the plaintiff to sign and return. However, the plaintiff responded that he would not authorize access to his medical records unless the defendant provided him with a copy of those medical records. The defendant contends that the DOC is under no obligation to provide the plaintiff with a free copy of his DOC medical records, which

9

he can access and copy at his own expense. The plaintiff responds that the court should not grant the defendant's motion to dismiss, but rather should grant summary judgment in his favor. The plaintiff also states that he will pay for his own copies.

Although not entirely clear, based on his response it appears that the plaintiff will now sign the medical records authorization form. In any event, the defendant subsequently filed a motion for summary judgment (addressed *infra.*). Therefore, the defendant's motion to dismiss will be denied as moot.

On January 9, 2006, the plaintiff filed Motion to Make Medical Record Part of Record of this Case (Docket #57). Apparently, the plaintiff wants the court to make his entire DOC medical record part of this case so that the defendant cannot "pick & choose what he want in record, to befit [sic] his case." (Pl.'s Mot. at 2.) On January 10, 2006, the plaintiff filed Motion to Make Jacobs v. Frank State Court No. 03-CV-2644 and All Appeals Part of This Record (Docket #60). According to the plaintiff, this will show why he was denied access to state court and why the defendant objects to answering interrogatory number 13. The plaintiff is advised that he may submit these materials to the court. He is reminded that a copy should also be provided to the defendant. The plaintiff's motions will be denied as moot.

On March 9, 2006, the plaintiff filed what he calls a motion compel (Docket #79). This motion requests that the court "move this case forth." This motion will be denied as moot.

10

**Plaintiff's Motion to Appoint Counsel**

On January 9, 2006, the plaintiff filed a motion for appointment of counsel (Docket #58). Indigent civil litigants have no absolute constitutional or statutory right to be represented by counsel in federal court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992); *McKeever v. Israel*, 689 F.2d 1315, 1318 (7th Cir. 1982). This court is authorized to request, but not to compel (*see Mallard v. United States District Court*, 490 U.S. 296 (1989)), an attorney to represent an indigent civil litigant pursuant to 28 U.S.C. § 1915(e)(1). *Jackson*, 953 F.2d at 1071; *McKeever*, 689 F.2d at 1318. However, this court has no access to funds to compensate attorneys for such representation. This court, therefore, appoints counsel under § 1915(e)(1) only in the rare case where the failure to appoint counsel would be so fundamentally unfair that the plaintiff's due process rights would be violated. *McNeil v. Lowney*, 831 F.2d 1368, 1371 (7th Cir. 1987).

The threshold requirement for appointment of counsel under § 1915(e)(1) is whether a plaintiff has made a reasonable, but unsuccessful, effort to retain counsel, or whether the plaintiff was effectively precluded from making such efforts. *Jackson*, 953 F.2d at 1073. If a plaintiff has made no effort to secure counsel, the motion must ordinarily be denied outright. *Id.* Once this initial requirement is met, the court, in exercising its discretion with regard to plaintiff's request, must address the following question: given the difficulty of the case, does this plaintiff appear to be competent to try the case himself and, if not, would the presence of counsel likely make a difference in the outcome of the case. *See Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).

11

In this case, the plaintiff has not provided any indication that he has unsuccessfully attempted to obtain legal counsel on his own. The plaintiff should provide the court with the names and addresses of five counsel he has contacted. Moreover, the issues in this case appear at this stage to be straightforward and uncomplicated. Accordingly, the plaintiff's request for appointment of counsel will be denied.

### Additional Matter

On February 10, 2006, the defendant filed a motion for summary judgment (Docket #66). In support of his motion, the defendant contends that, 1) the plaintiff has adduced no proof of the defendant's personal involvement in his alleged constitutional violations; 2) the plaintiff has not shown that his alleged constitutional deprivations were pursuant to a DOC policy or custom; and 3) the plaintiff's claims for injunctive relief from conditions of confinement unique to Green Bay Correctional Institution are moot because he is now at a different prison.

The plaintiff has not filed a response to the defendant's motion. However, he will be granted additional time until **May 1, 2006**, in which to file his response. The plaintiff is advised that failure to file a response by **May 1, 2006**, may result in the dismissal of this case for lack of diligence in prosecuting this action

### ORDER

**IT IS THEREFORE ORDERED** that the plaintiff's motion for order (Docket #43) is **denied**.

12

**IT IS FURTHER ORDERED** that the plaintiff's motion to compel (Docket #50) is **denied**.

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss (Docket #51) is **denied as moot**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for order to make medical record part of record in this case (Docket #57) is **denied as moot**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Docket #58) is **denied**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for order to make Jacob v. Frank, State Court No. 03CV2644 and all appeals, part of this record (Docket #60) is **denied as moot**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for order for injunction (Docket #72) is **denied**.

**IT IS FURTHER ORDERED** that the plaintiff's reply to his motion for order for injunction (Docket #77) is **denied as moot**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to compel (Docket #79) is **denied as moot**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for court order (Docket #80) is **denied**.

**IT IS FURTHER ORDERED** that the plaintiff shall file a response to the defendant's motion for summary judgment on or before **May 1, 2006**. Failure to file a response by **May 1, 2006**, may result in the dismissal of this case for lack of diligence in prosecuting this action.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2006.

**SO ORDERED,**

s/ Rudolph T. Randa
**HON. RUDOLPH T. RANDA**
**Chief Judge**